UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOURDES CASILLAS,<br><br>              Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>             Defendant. | Case No. CV 15-01912 -GJS<br><br>MEMORANDUM OPINION AND<br>ORDER |

## I.     PROCEEDINGS

Plaintiff Lourdes Casillas ("Plaintiff") filed a complaint seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed consents to proceed before the undersigned United States Magistrate Judge, and a Joint Stipulation addressing disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.     BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff asserts disability since November 17, 2009, based primarily on a herniated disc at L4-5.  (Administrative Record ("AR") 83-84, 147, 188, 219).

After a hearing, an Administrative Law Judge ("ALJ") applied the five-step sequential evaluation process to find Plaintiff not disabled.  *See* 20 C.F.R. § 404.1520(b)-(g)(1).[1]  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful employment since her alleged onset date.  (AR 16).  At step two, the ALJ found that Plaintiff has the severe impairment of degenerative disc disease.  (AR 16).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 19). The ALJ then assessed Plaintiff with the residual functional capacity ("RFC") for the full range of light work, 20 C.F.R. § 404.1567(b), and found at step four that Plaintiff is capable of performing her past relevant work as an inspector of paper goods.  (AR 19, 25).  Therefore, the ALJ concluded that Plaintiff was not disabled. (AR 29).

The Appeals Council denied Plaintiff's request for review.  (AR 1-3).

On March 16, 2015, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision denying benefits.  Plaintiff raises the following arguments:  (1) the ALJ failed to properly assess the medical evidence; (2) the ALJ failed to provide adequate reasons for discrediting Plaintiff's subjective complaints; and (3) the ALJ erred in finding Plaintiff can perform past work.

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 404.1520.  The steps are as follows:  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two; (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five; (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(b)-(g)(1).

(Joint Stipulation ("Joint Stip.") at 3-9, 20-23, 27-28).  The Commissioner asserts that the ALJ's decision should be affirmed.  (Joint Stip. at 9-20, 23-27, 28-30).

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if:  (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV.  DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends, *inter alia*, that the ALJ erred in failing to articulate valid reasons for rejecting the opinion of an agreed medical examiner, orthopedic surgeon Donald A. Dinwoodie, M.D.  (Joint Stip. at 6-8).  As discussed below, the Court agrees.

An ALJ may reject the uncontroverted opinion of a treating or examining physician by providing "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  Where a treating or examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject the opinion "by providing specific and legitimate reasons that are supported by substantial evidence."  *Bayliss*, 427 F.3d at 1216.  An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

3

1989).  An ALJ "must do more than offer his conclusions." *Reddick*, 157 F.3d at 725; *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinion insufficient) (citation omitted). "[The ALJ] must set forth his own interpretations and explain why they, rather than the [physician's], are correct." *Reddick*, 157 F.3d at 725; (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

In February 2011, Dr. Dinwoodie issued an agreed medical evaluation following an orthopedic examination of Plaintiff.  (AR 354-76).  Dr. Dinwoodie reported that Plaintiff injured her back while working as a stock worker in November 2009.  (AR 354-55).  Although Plaintiff indicated that her symptoms had improved since she last worked, Plaintiff complained of lower back pain that was aggravated by standing, walking, prolonged sitting, bending, lifting, and twisting while lifting.  (AR 358).  An MRI of Plaintiff's lumbar spine revealed a 3 millimeter central L4-5 disc protrusion, and moderate facet hypertrophy producing a slight central canal narrowing and slight bilateral foraminal narrowing.  (AR 363).  Plaintiff demonstrated somewhat poor effort on motion testing, but Dr. Dinwoodie noted that Plaintiff's range of motion was reasonably reduced secondary to pain.  (AR 361-62, 370).  Dr. Dinwoodie diagnosed Plaintiff with acute L4-5 disc protrusion, history of radiculopathy, resolved, and gastrointestinal problems causing stomach pain and poor sleep.  (AR 371).  Plaintiff was not a candidate for surgery at that time.  (AR 370).  Although epidural injections had been recommended, they had not been performed because Plaintiff had uncontrolled hypertension and was not interested in receiving injections.  (AR 357, 370).  Dr. Dinwoodie stated that Plaintiff's complaints and limitations were supported by the findings on MRI and examination, and that Plaintiff had reached maximum medical improvement resulting in an 8-percent whole person impairment.  (AR 372-73).  Dr. Dinwoodie opined that Plaintiff was not able to return to her usual employment as a stock worker, as that job was actually

4

performed by Plaintiff.  (AR 354, 374).  Dr. Dinwoodie recommended that Plaintiff be provided with pain management, orthopedic re-evaluations, diagnostic studies, epidural injections if beneficial, and possible lumbar surgery.  (AR 371, 374).

In April 2011, Dr. Dinwoodie issued a supplemental report addressing Plaintiff's work restrictions.  (AR 377-79).  Dr. Dinwoodie opined that Plaintiff was limited as follows:  no lifting or carrying more than 25 pounds; no repetitive bending and twisting; and no prolonged sitting or prolonged weight bearing, i.e., sitting or constant weight bearing more than two hours without a 15-minute break to change positions.  (AR 378).

In the decision, the ALJ summarized Dr. Dinwoodie's findings from the February 2011 agreed medical evaluation, but did not discuss Dr. Dinwoodie's April 2011supplemental report or his assessment of Plaintiff's work-related restrictions.  (AR 22, 377-79).  The ALJ dismissed Dr. Dinwoodie's opinion that Plaintiff could not return to past work as a stock worker as actually performed because Dr. Dinwoodie's opinion was elicited in Plaintiff's workers' compensation case and Social Security claims require application of a different standard for determining disability.  (AR 22, 372, 374).  The ALJ stated generally that he gave "little weight" to multiple medical source statements from physicians associated with Plaintiff's workers' compensation claim, as the "reports and opinions of these doctors were done in anticipation" of Plaintiff's workers' compensation claim. (AR 24).  The ALJ further indicated that Dr. Dinwoodie's opinion regarding Plaintiff's inability to perform her past work was not entitled to any weight because his opinion was "outside of the doctor's area of expertise," as he was not a vocational expert.  (AR 22).  The ALJ failed to provide legally sufficient reasons for rejecting Dr. Dinwoodie's opinion.

It was improper for the ALJ to disregard Dr. Dinwoodie's medical opinion simply because it was initially generated in a workers' compensation case.

Although "[t]he categories of work under the Social Security disability scheme are measured quite differently" than under the state workers' compensation scheme, *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988), an ALJ must give a medical opinion prepared for a workers' compensation case proper consideration and articulate reasons if that opinion is rejected. *See Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D. Cal. Jan. 22, 2002) ("[t]he ALJ's decision . . . should explain the basis for any material inference the ALJ has drawn from those opinions so that meaningful judicial review will be facilitated"); *Lester*, 81 F.3d at 832 ([t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them"). An ALJ must evaluate the objective medical findings in such opinions "just as he or she would [for] any other medical opinion." *Booth*, 181 F.Supp.2d at 1105-06 (an ALJ is entitled to draw inferences "logically flowing from" findings in workers' compensation medical opinions) (citations and internal quotation marks omitted). Here, the ALJ did not even mention Dr. Dinwoodie's assessment of Plaintiff's physical limitations, as set forth in the April 2011 supplemental report. The ALJ's failure to provide any analysis or legitimate reasons for disregarding Dr. Dinwoodie's assessment was error. *See Booth*, 181 F.Supp.2d at 1105; *see also* Soc. Sec. Ruling 96-8p ("SSR") (explaining that the RFC assessment must always consider and address medical source opinions, and if the assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted). The ALJ's general dismissal of all of Plaintiff's medical source statements associated with her workers' compensation claim was not a specific, legitimate basis for rejecting Dr. Dinwoodie's April 2011 work capacity assessment. *See Reddick*, 157 F.3d at 725 (ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); *Lester*, 81 F.3d at 832.

Further, the ALJ was not entitled to reject Dr. Dinwoodie's opinion simply

6

because he found that Plaintiff was unable to perform her past work as a stock worker.  (AR 22, 374).  Although the ALJ did not need to accept Dr. Dinwoodie's opinion of disability, the ALJ erred by failing to offer specific and legitimate reasons supported by substantial evidence in the record before rejecting it.  *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (Medical sources may provide "two types of opinions:  medical opinions that speak to the nature and extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, i.e., opinions about whether a claimant is capable of any work, given her or his limitations."); *Reddick*, 157 F.3d at 725 (explaining that an opinion on the ultimate issue of disability, if controverted, can be rejected only with "specific and legitimate reasons supported by substantial evidence"); SSR 96-5p (ALJ "must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.").

The Commissioner attempts to support the ALJ's rejection of Dr. Dinwoodie's opinion based on several reasons not cited by the ALJ.  For example, the Commissioner argues that the ALJ properly rejected Dr. Dinwoodie's opinion because it conflicted with his examination notes, lacked objective support, and was inconsistent with Plaintiff's daily activities.  (Joint Stip. at 12, 14).  However, the ALJ never offered any of these reasons as a basis for discounting Dr. Dinwoodie's opinion.  The Commissioner further suggests that the ALJ properly relied on evidence of improvement in Plaintiff's condition and a history of conservative treatment.  (Joint Stip. at 12; AR 22).  Although the ALJ noted in summarizing Dr. Dinwoodie's February 2011 evaluation that Plaintiff was not a candidate for lumbar surgery or epidural injections, and that Plaintiff's symptoms had improved since her injury, the ALJ did not cite conservative treatment or improvement in Plaintiff's condition to support rejection of Dr. Dinwoodie's opinion.  (AR 22).  The ALJ's decision cannot be affirmed based on the Commissioner's post hoc rationalizations.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225

7

(9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not post hoc rationalizations that attempt to intuit what the [ALJ] may have been thinking."); *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency").

The Commissioner further asserts that Dr. Dinwoodie's finding that Plaintiff could not perform her past work as a stock worker, which was performed at the medium level, does not conflict with the ALJ's determination that Plaintiff is capable of performing her past work as an inspector of paper goods, which requires light work, as actually and generally performed.  (Joint Stip. at 13-14; AR 25, 99-100).  To the extent the Commissioner may be arguing that the ALJ's error in rejecting Dr. Dinwoodie's opinion was harmless, the Court disagrees.  By disregarding Dr. Dinwoodie's April 2011 supplemental report, the ALJ failed to include in the RFC Dr. Dinwoodie's opinion that Plaintiff is precluded from repetitive bending or twisting, and sitting or weightbearing for more than 2 hours, without a 15-minute break to change positions.  (AR 19, 378).  As these limitations would likely impact Plaintiff's ability to perform the full range of light work, *see Desrosiers*, 846 F.2d at 579-80 (Pregerson, J., concurring), the ALJ's error in rejecting Dr. Dinwoodie's opinion cannot be considered harmless.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (an error is harmless if it is "clear from the record that an ALJ's error 'was inconsequential to the ultimate nondisability determination'") (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

/ / /

/ / /

/ / /

/ / /

8

1

## CONCLUSION AND ORDER

2
3
4
5
6
7
8
9
10
11
12

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

13
14
15
16
17
18

The Court finds that remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Harman*, 211 F.3d at 1180-81.

19
20
21

IT IS THEREFORE ORDERED that Judgment be entered reversing the Commissioner's decision and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion and Order.[2]

22
23
24

DATED: October 29, 2015

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

25
26
27

_____

[2] The Court has not reached any other issue raised by Plaintiff except as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.

28